Argued and submitted October 16, 1991, affirmed March 11, 1992

In the Matter of the Compensation of
Robert E. Roy, Claimant.
BOEING AIRCRAFT COMPANY
and Aetna Casualty Company,
*Petitioners,*

*v.*

Robert E. ROY,
*Respondent.*

(89-07274; CA A66907)

827 P2d 915

Jeremy L. Fellows, Portland, argued the cause for petitioners. With him on the brief was Scheminske & Lyons, Portland.

Kevin Keaney, Portland, argued the cause for respondent. With him on the brief were Donald Atchison, Robert K. Udziela and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Employer seeks review of a Workers' Compensation Board order holding that pain and numbness in claimant's shoulder, arm and hand are compensable conditions. It argues that the Board erred in setting aside the denial, because it was a partial denial of compensation involving 2 conditions from which claimant did not suffer. It also assigns error to the Board's determination that the condition is compensable, because claimant failed to establish a specific medical diagnosis for the cause of his pain and to its finding that the condition was the result of an on the job injury.

Claimant had an accident at work on January 18, 1989, while moving a heavy box of machine parts. Employer described the accident in the injury report:

> "As Robert reached down to straighten out parts basket to be parallel to operator's platform[,] his foot slipped off edge of platform, resulting in the twisting injury."

Claimant suffered some lower back and hip pain immediately and consulted the plant nurse, but he did not miss any work and did not consult a physician. As the back and hip pain gradually improved, he began to have pain in his neck and left shoulder. On February 5, 1989, he suffered sudden excruciating pain in his neck, left shoulder and arm, when he bent over to pick up a piece of paper in his bathroom at home. He went to see his family physician, Dr. Johansen.

On the first First Medical Report form, Johansen wrote as his diagnosis: "Strain left shoulde[r] (tendonitis)." A few days later, claimant went to a hospital emergency room for treatment of "right shoulder and arm pain with hand numbness." The hospital record shows that the emergency room physician diagnosed the problem as neuralgia and referred claimant to Dr. Cleary, an allergist, who concluded that the condition was "not in his field" and immediately referred claimant to a neurologist. Cleary nevertheless filled in the diagnosis section of the second First Medical Report form: "R[ule]/O[ut] L[eft] ulnar nerve injury L[eft] brachial plexus injury." Under remarks he added, "To see Dr. Robert Rosenbaum M.D." The Board found that Cleary did not intend those comments to be a diagnosis, but

> "reported to the carrier that he was referring claimant to Dr. Rosenbaum [a neurologist] *in order to rule out* a left ulnar

nerve injury and a left brachial plexus injury." (Emphasis supplied.)

There is substantial evidence to support that.

In a letter dated February 21, 1989, Rosenbaum concluded, after his examination of claimant:

"[T]he patient now has discomfort in the left shoulder into the left upper extremity. His symptoms and his weakness are primarily in an ulnar nerve distribution, however, in addition he has pain in his shoulder and a decreased left triceps reflex. Rather than an ulnar nerve lesion, I think that this represents a C8 nerve root lesion. Because the patient does have significant left hand weakness I have scheduled him for a MRI scan of the cervical spine."

The MRI report indicated that claimant had "narrowing of the left C7-T1 neuroforamen for the C8 root due to osteophyte formation arising from the body of T1." Johansen's progress report, dated March 21, 1989, interpreted the medical reports:

"ACUTE PROBLEM: C: TENDONITIS LEFT SHOULDER. * * * [Claimant] had nerve conduction studies which showed some changes in his left arm and also a CT scan which showed some changes in his neck. That might cause nerve pressure. * * * Dr. Cleary and Dr. Rosenbaum felt that this was an industrial injury that was caused by an incident where he slipped while moving baskets of old parts on 1/18/89."

■    On February 15, 1989, claimant filed a claim for compensation for left arm and shoulder pain that caused time loss. On March 1, employer denied the claim:

"We have concluded our investigation into the above captioned claim. Please be advised that we are denying your claim since our investigation indicates that the condition from which you suffer did not arise out of and in the scope of your employment.

"That your left ulnar nerve and brachial plexus injuries are not causily [sic] related to the accident on January 18, 1989."

Employer argues that that letter only denied compensation for the 2 injury diagnoses specified in the second paragraph and was not a denial of the entire claim. It contends that claimant failed to prove that he suffered either of those injuries.

The Board's finding that the insurer intended the letter to be a complete denial is supported by substantial evidence in the record. The first paragraph clearly says that employer's investigation had been completed and implies that employer did not intend to consider the claim any further. The second paragraph suggests that employer had treated Cleary's note as a diagnosis. Even though the letter does not specifically mention tendonitis or neuralgia, it does not suggest that the decision was incomplete or that any element of the claim was still being considered. Moreover, claimant never received any other acceptance or denial.

■ In its second assignment of error, employer argues that the Board should have required claimant to prove a specific medical diagnosis to support the claim that his pain symptoms reflected a compensable injury. It relies on *Weyerhaeuser Co. v. Warrilow*, 96 Or App 34, 771 P2d 295, *rev den* 308 Or 184 (1989), in which we reversed the Board and reinstated the employer's partial denial of a claim for neck, shoulder, mid-back and left ankle pain. We held that, although the employer's letter was vague as to what conditions it had accepted, it was specific as to what it had denied and was, therefore, permissible as a partial denial.

That case does not stand for the proposition that employer advances here. The Board did not set aside a denial of responsibility for left ulnar nerve or brachial plexus injury; those denials were irrelevant, because claimant did not have those injuries and did not make a claim for them. The Board set aside a general denial of the claim.

Employer complains that it would be "completely unfair" if we affirm the Board, because it will be financially responsible if claimant's pain returns, "even if it is later conclusively determined that the pain is due to an otherwise noncompensable degenerative condition (like cervical osteophyte formations)."[1] It urges that claims that lack specificity "impale the employer on the horns of a dilemma," unfairly forcing it to risk failing to accept or deny the claim timely on the one hand or exposing itself to liability for a noncompensable condition on the other. ORS 656.262(10); *Georgia-*

---

[1] We note that insurer sent the letter after the MRI revealed osteophyte formation, but it did not specify that diagnosis in its denial.

*Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988). Even if employer has correctly identified the legal effect of those hypothetical facts as a dilemma,[2] it has not raised an issue that we can address.[3]

██ ██    Finally, employer argues that the record does not contain substantial evidence to support the Board's finding that claimant's pain and numbness were caused by his work. It returns to the theory that claimant had to prove a particular *diagnosis* in order to show by substantial evidence that the condition from which he suffers is related to the January 18 injury. It argues that that proof is required under *Johnsen v. Hamilton Electric*, 90 Or App 161, 751 P2d 246 (1988), in which we held that the claimant failed to prove that he was entitled to compensation, because he had no evidence that the abnormal marks on his lung were caused by any injury or disease. The claimant was seeking payment for diagnostic chest x-rays, not compensation for missed work or treatment of any condition that prevented him from performing his job. Without proof that he had an injury or disease, claimant could not prove that the lung marks were related to his work.

A claimant need not prove a specific diagnosis if he proves that his symptoms are attributable to his work. *Tripp v. Ridge Runner Timber Services*, 89 Or App 355, 749 P2d 586 (1988); *see Karen M. Partridge*, 39 Van Natta 137 (1987). Employer argues, however, that "[t]he only diagnosis for claimant's pain symptoms which has not been ruled out by medical testing indicates that claimant's condition was caused by osteophyte formation in his cervical spine, a degenerative condition unrelated to the incident at work." The evidence shows that claimant has osteophyte formation in his cervical spine, but it does not show that that condition causes his pain. Moreover, neither tendonitis nor neuralgia were

---

[2] ORS 656.262(6) provides, in part:

"[I]f the insurer or self-insured employer accepts a claim in good faith but later obtains evidence that the claim is not compensable or evidence that the paying agent is not responsible for the claim, the insurer or self-insured employer, at any time up to two years from the date of claim acceptance, may revoke the claim acceptance and issue a formal notice of claim denial."

Moreover, an insurer may make a claim acceptance more specific than the claim is. *SAIF v. Abbott*, 107 Or App 53, 810 P2d 878 (1991).

[3] Employer's remedy, if any, lies with the legislature. *See SAIF v. Curry*, 297 Or 504, 511, 686 P2d 363 (1984).

"ruled out by medical testing," as employer would have it. Tendonitis was, in fact, Johansen's first and final diagnosis, and that is consistent with the accident that occurred on January 18.

Employer contends that the Board concluded that claimant's pain was caused by his work only because the record contained no evidence to the contrary. The absence of evidence of some other cause, it argues, is not substantial evidence that work was the cause. Although absence of evidence of another cause might not alone constitute *substantial* evidence, it is evidence. *See, e.g., Tripp v. Ridge Runner Timber Services, supra.* In addition, the record contains Johansen's interpretation of the medical reports that claimant's pain was related to the January 18 accident. The facts that the initial injury was characterized as "twisting" claimant's whole body and that his neck pain gradually increased as his back pain gradually diminished also support the Board's conclusion that the condition was caused by his work. That evidence is substantial enough to support the Board's order.

Affirmed.